UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER LAMAR ANDERSON,

    Petitioner,

v.                                                                                     Case No. 2:09-cv-104
                                                                                            HON. GORDON J. QUIST

BARRY D. DAVIS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Christopher Lamar Anderson filed this petition for writ of habeas corpus challenging his prison sentence of consecutive terms of 20 to 60 years for possession with intent to deliver cocaine, more than 225 grams but less than 650 grams (MCL 333.7401), and 20 to 30 years for conspiracy to posses with intent to deliver cocaine, more than 225 grams but less than 650 grams (MCL 750.157a).  The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  The parties have briefed the issues and the matter is now ready for decision.

Petitioner raises the following claims:

I. Petitioner's trial violated his Fifth Amendment rights and was barred constituting double jeopardy.

II. Petitioner's legal issues were required to be heard on the merits.

III. Petitioner was unconstitutionally prejudiced by ineffective assistance of appellate counsel.

      IV. Petitioner was denied his right to the effective assistance of trial counsel when his counsel advised him to sign an affidavit and file it with the court where the only purpose was to secure a severed trial after the court had already denied the request.

      V. Petitioner was denied a fair trial due to prosecutorial misconduct.

      VI. The prosecutor improperly presented drug profile testimony and argument.

      VII. Petitioner was denied the right of confrontation and a fair trial by hearsay statements of a non-testifying co-defendant.

      VIII. The instructions to the jury on conspiracy were incorrect, misleading, and prejudicial.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the

2

Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption

3

of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that his trial violated his Fifth Amendment double jeopardy rights. Petitioner asserts that after the prosecution introduced newly discovered fingerprint evidence, the trial court forced him to request a mistrial. Petitioner reasons that this is because the court refused a continuance which would have allowed him to find his own fingerprint expert. Petitioner argues that the resulting second trial violated his Fifth Amendment rights. The Michigan Court of Appeals denied this claim upon direct appeal:

> Defendant argues he was subjected to double jeopardy when after his first trial ended in a mistrial, he was retried. We disagree.
>
> A constitutional double jeopardy challenge presents a question of law that this Court reviews de novo. *People v Lett,* 466 Mich 206, 212; 644 NW2d 743 (2002). Both the United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, sec 15; *People v Herron,* 464 Mich 593, 599; 628 NW2d 528 (2001). "The double jeopardy clause of the Fifth Amendment protects against two general governmental abuses: (1) multiple prosecution for the same offense after an acquittal or conviction; and (2) multiple punishments for the same offense." *Id.* Generally, jeopardy attaches in a jury trial once the jury is impaneled and sworn. *Lett, supra* at 215. Absent manifest necessity or the defendant's consent to a mistrial before a determination on the merits, the defendant cannot be brought to trial again. *People v Grace,* 258 Mich App 274, 280; 617 NW2d 554 (2003).
>
> In this case, the record from the first trial indicates that when the trial originally began, the prosecutor, because of the initial fingerprint report, mistakenly believed that there was identifiable fingerprints on the drug evidence seized in the case. In fact, both the prosecutor and defense counsel remarked in their opening statements that there would be no fingerprint evidence during the trial. But, during the second day of the first trial, it was discovered that there were actually two fingerprint reports, and that the second report indicated that prints belonging to defendant and another person were found on duct tape used in wrapping the package of cocaine. After the court determined

4

>that the newly discovered fingerprint evidence was admissible, defendant moved for a continuance for the purpose of obtaining an independent fingerprint expert, estimating that at least three weeks would be required. The trial court denied defendant's request for the continuance on the basis that it would be unfair to a co-defendant who shared the same jury and wished to go forward with the trial. The court gave defendant the option of either continuing with the trial or requesting a mistrial.
>
>Defendant now argues he did not voluntarily consent to a mistrial because he was coerced into accepting the mistrial. Defendant alleges that he had a right to continue his original trial, but that he should have been allowed a continuance in order to have an expert analyze the fingerprint evidence. Defendant argues that the option of going forward in the trial without first having his own expert analyze the evidence was so prejudicial to his case that he essentially had no option but to take the mistrial. Because of this alleged "Hobson's choice," defendant insists there was no consent to a mistrial during the first trial, so plaintiff should have been precluded from bringing charges against him in the second trial.

Michigan Court of Appeals opinion, docket #27, at 1.

The Michigan Court of Appeals, citing *United States v. Dinitz,* 424 U.S. 600, 609 (1976), concluded that the most important consideration when determining double jeopardy is whether or not the defendant retained primary control over the course to be followed in the event of judicial or prosecutorial error. The Michigan Court of Appeals determined that Petitioner had retained primary control over the decision whether to continue with the same jury. The Court found that Petitioner's decision to request a mistrial in light of the trial court's decision not to grant a continuance did not bar Petitioner's second trial on double jeopardy grounds. In the opinion of the undersigned, the Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law.

Petitioner argues that the wrong standard of review was used during his post-conviction proceedings. Petitioner claims that jurisdictional issues dismissed by the trial court in

5

his Motion for Relief from Judgment were done so egregiously. The Sixth Circuit has determined that errors committed during post-conviction proceedings are outside the scope of federal habeas corpus review. *Kirby v. Dutton,* 794 F.2d 245, 246-47 (Sixth Cir. 1986). The Court stated: "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Id*. at 246. The Court found that a due process claim related to a collateral post-conviction proceeding, even if resolved in a petitioner's favor, would not "result [in]. . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Id.* at 247. Habeas review is not the proper platform to challenge claims of errors or deficiencies in state post-conviction hearings; these claims address collateral matters, not the underlying state conviction giving rise to the prisoner's incarceration. *Id.* at 247.

Petitioner asserts that he was unconstitutionally prejudiced by ineffective assistance of appellate counsel. Petitioner claims that the ineffectiveness of his appellate counsel explains his failure to raise many of the subsequent habeas claims during his appeal of right. However, Petitioner's appellate counsel raised several issues in his appeal of right in the Michigan Court of Appeals. The United States Supreme Court has held that failure to raise every colorable argument does not constitute ineffective assistance of counsel: "A brief that raises every colorable issue runs the risk of burying good arguments – those that, in the words of the great advocate John W. Davis, 'go for the jugular'– in a verbal mound made up of strong and weak contentions." *Jones v. Barnes,* 463 U.S. 745, 753 (1983). Appellate counsel's decision to omit certain claims raised in the motion for relief from judgment in favor of others was a strategic one and does not constitute ineffective assistance of counsel.

6

Petitioner argues that his trial counsel was ineffective when counsel advised him to sign an affidavit to secure a severed trial after the court had already denied the request. Respondent argues that this issue is procedurally defaulted. When a state-law default prevents further state consideration of a federal issue, the federal courts are ordinarily precluded from considering that issue on habeas corpus review. *See Ylst v. Nunemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). The Sixth Circuit applies a four-part test to determine whether a claim is procedurally defaulted: (1) the court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the state procedural rule; (3) the default must be an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the foregoing are met, the petitioner must demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001). There may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 122 S.Ct. 877, 878 ( 2002). A petitioner may also excuse a default by making a colorable claim of innocence; that is, he has shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). This exception is reserved for a very narrow class of cases, based on a claim of "new reliable evidence." *Schlup*, 513 U.S. at 315, 324.

The Michigan Court of Appeals expressly stated that it denied Petitioner's application for leave to appeal on the basis that Petitioner failed to "meet the burden of establishing entitlement

to relief under M.C.R. 6.508(D)." Under M.C.R. 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. For claims that could have been raised, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1104, 1006-1007 (6th Cir. 2000). Because M.C.R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place some time thereafter, M.C.R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998). In order to overcome his procedural default, Petitioner must show cause and prejudice.

To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether Petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by

8

>counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

Petitioner signed an affidavit swearing he had not touched a roll of duct tape that was found in his car and had been used to package cocaine. By signing this affidavit, Petitioner hoped to sever his trial from his co-defendant's trial. Petitioner claims that because fingerprints were later offered into evidence suggesting that he had in fact handled the roll of duct tape, his trial counsel acted ineffectively by urging him to sign the affidavit which the prosecution then used against him. Petitioner's trial counsel did not know about the fingerprint evidence that was admitted into evidence during trial. The prosecution did not know that the fingerprint evidence was relevant until the second day of trial. Furthermore, there is nothing to suggest that the outcome of the proceedings would have been any different had the affidavit not been signed and submitted to the court. Petitioner has not established good cause for failing to raise this issue on appeal, nor has he shown prejudice or a fundamental miscarriage of justice to be entitled to habeas relief.

Petitioner claims that his trial counsel abandoned his client. In the opinion of the undersigned, this claim is also procedurally defaulted under MCR 6.508(D). Petitioner failed to raise this issue on direct appeal. Petitioner argues that the advice given by trial counsel to sign and

9

submit the affidavit stating that he had not handled the duct tape used to package the cocaine was erroneous and could only be used against him. Petitioner further argues that by submitting the affidavit, trial counsel was only benefitting Petitioner's co-defendants; therefore, trial counsel placed itself in a position conducive to divided loyalty. Petitioner signed the affidavit in order to obtain a separate trial from co-defendants. At the time the affidavit was signed, the only evidence possibly linking the drugs to Petitioner was a roll of duct tape found in his car. Petitioner claimed that he had never touched the tape and that it did not belong to him. Later, fingerprint evidence surfaced suggesting he had in fact touched the duct tape as well as handled the package of drugs. Had the severance succeeded, Petitioner would have benefitted from the affidavit. Petitioner has not shown how the result of the proceedings would have been different had the affidavit not been signed and submitted. Furthermore, the affidavit was submitted after the trial court denied the severance and was ruled irrelevant and inadmissable hearsay and played no part in the court's decision. Petitioner has not established good cause for failing to raise this issue on appeal. Nor has Petitioner shown any prejudice or a fundamental miscarriage of justice to be entitled to habeas relief.

Petitioner raises claims of prosecutorial misconduct. This issue is procedurally defaulted under MCR 6.508 (D). Petitioner has failed to "meet the burden of establishing entitlement to relief." Petitioner failed to raise this issue upon direct appeal. Additionally, Petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor

constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).

Petitioner claims that the prosecution made remarks to mislead trial counsel. Petitioner asserts that his trial counsel withdrew a motion for discovery for all forensic and lab reports after the prosecutor represented that all the reports were provided to the defense. Petitioner claims that had the fingerprint evidence that later turned up during trial been known to trial counsel, a continuance would not have been needed and he would not have been coerced into a mistrial. Petitioner has offered no evidence that the prosecution intentionally withheld the second report containing fingerprint evidence. Furthermore, the affidavit submitted by trial counsel was deemed inadmissable hearsay and irrelevant by the trial court. Petitioner has not established good cause for failing to raise this issue on appeal. Nor has he shown prejudice or a fundamental miscarriage of justice to be entitled to habeas relief. Petitioner has also failed to show how the prosecutor's conduct deprived him of a fair trial.

Petitioner also argues that the prosecution engaged in misconduct when it changed legal and factual positions from one proceeding to another, depriving Petitioner his right to due process and a fair trial. This claim is also procedurally defaulted as Petitioner did not raise this issue on direct appeal. (MCR 6.508 (D)). Petitioner asserts that at his first trial, the prosecutor claimed the affidavit submitted in hopes to sever trials was inadmissable hearsay and irrelevant. The trial court agreed and denied the motion to sever trials. Petitioner claims that during his second trial, the prosecution relied on this affidavit as evidence to convict. Petitioner relies on the doctrine of judicial estoppel to assert his claim. Petitioner cites the United States Supreme Court case *Zedner*

*v. United States*, 547 U.S. 489 (2006) (Docket #1, brief in support of petition for habeas corpus, page 50). In that case, the Court explained the elements of judicial estoppel as laid out in the case *Davis v. Wakelee*, 156 U.S. 680 (1895):

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

*Id.* at 689. While the trial court did rule the affidavit inadmissable and irrelevant based on the prosecution's arguments, this occurred in a completely separate proceeding from when the prosecution referenced the affidavit as evidence. Petitioner requested and was granted a mistrial and elected to be tried by a new jury. Petitioner has failed to show good cause for failing to raise this issue on appeal. Petitioner has also failed to show actual prejudice or a fundamental miscarriage of justice to be entitled to habeas relief. Nor has Petitioner shown that his rights were violated or that any prejudice resulted from the prosecutor's conduct.

Petitioner argues that the trial court erred when it permitted improper drug profile testimony and argument. Petitioner claims that profile evidence was used to paint Petitioner as a typical drug dealer and convict him on the basis of his alleged status, not the alleged crime. The Michigan Court of Appeals disagreed:

> Finally, defendant argues that expert testimony regarding drug caravans was improperly prejudicial drug profile testimony because it was used as substantive evidence to prove defendant's guilt. We disagree.
>
> A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Williams,* 240 Mich App 316, 320; 614 NW2d 647 (2000). An abuse of discretion exists only if an unprejudiced person considering the facts on which the trial court acted would say that there was no justification or excuse for the ruling made. *Id.* This Court has listed four factors to apply in determining whether drug

profile evidence should be admitted. First, the drug-profile evidence must be offered as background or modus operandi evidence, and not as substantive evidence of guilt, and the distinction must be carefully maintained by the attorneys and the court. Second, something more than drug profile evidence must be admitted to prove a defendant's guilt; multiple pieces of profile do not add up to guilt without something more. Third, the trial court must make clear to the jury what is and is not an appropriate use of the drug-profile evidence by, e.g., instructing the jury that drug-profile evidence is properly used only as background or modus operandi evidence and should not be used as substantive evidence of guilt. Fourth, the expert witness should not be permitted to express an opinion that, on the basis of the profile, defendant is guilty, and should not expressly compare the defendant's characteristics to the profile in a way that implies that the defendant is guilty.

In analyzing defendant's claim that the profile testimony from Mays was improper, we note that defendant provides only a cursory page-long argument for this issue in his brief. Noticeably absent is any analysis of the facts or reference to the above factors concerning the admissibility of profile testimony. Defendant simply concludes in his brief that: It is clear that the testimony of Lieutenant May renders the guilt of the defendant more probable than not. His testimony is more prejudicial than probative at it appears to fill in the missing gaps in the prosecutor's case. This testimony should not have been allowed, and to do so renders the court's decision to do so, an abuse of discretion. Therefore, defendant has impermissibly announced his position and left it to this Court to discover and rationalize the basis for his claims. *People v Leonard,* 224 Mich App 569, 588; 569 NW2d 663 (1997).

In any event, the trial court did not abuse its discretion in admitting the testimony of an expert on drug trafficking because the testimony was offered only as background evidence, the trial court gave a proper instruction regarding the testimony, other evidence of defendant's guilt was offered, and the expert did not specifically opine as to defendant's guilt.

Michigan Court of Appeals opinion, docket #27, at 15.

Additionally, a federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988).

In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims he was denied the right of confrontation and a fair trial by hearsay statements of a non-testifying co-defendant. Petitioner did not present this issue on direct appeal in accordance with MCR 6.508 (D), but waited until after the United States Supreme Court issued its decision in *Crawford v Washington*, 541 U.S. 36 (2004). The court found that because Petitioner filed his direct appeal before the Supreme Court reached its decision in *Crawford,* there was "good cause" for failure to raise this issue on direct appeal. However, in Judge Schofield's Opinion and Order Denying Motion for Relief from Judgment (Docket #40, page 5) he found that no error had occurred. Judge Schofield also found that there was no "actual prejudice," even if the statements were admitted erroneously.

> State Police Trooper Gillespie testified to statements made by co-defendant Eric Harvey when the two cars were stopped and the trooper was trying to determine what was going on. (Harvey was not available for cross-examination at the trial.) Among the statements made by Harvey were that he traveled between his home in Muskegon and his mother's home in Chicago and that he had borrowed the car. Defendant asserts that he was prejudiced by these statements because they comported with common drug-dealer behavior as testified to by Trooper Willie Mays later in the trial. (That drug dealers may travel frequently bringing drugs from Chicago and, because of drug forfeiture laws, do not travel in their own vehicles.)
>
> The Confrontation Clause prohibits admission of an out-of court testimonial statement against a defendant in a criminal case unless the witness is unavailable to testify at trial and the statement was previously subject to the defendant's cross-examination. *Crawford,*

*supra*. This is so even if the testimony would otherwise be admissible under a "firmly rooted" exception to the hearsay rule.

*Crawford* does not provide a tight definition of "testimony", but formality and structure are the common threads running through the examples of testimonial statements given in *Crawford*. Also important is the declarant's purpose and expectation in making the statement. Additionally, the purpose behind the Confrontation Clause must be kept in mind in deciding what out-of-court statements the Confrontation Clause excludes. *Crawford* says that the Framers sought to prohibit the *ex parte* methods creeping into English common law from civil-law traditions.

Harvey's on-the-street statements cannot be described as "testimony". They were statements given to an agent of the government, but were provided neither in an official setting nor in any formal manner for the purpose of providing evidence against the accused.

Even if *Crawford* required the exclusion of Harvey's roadside statements, that exclusion would not have given defendant a reasonably likely chance of acquittal. There was abundant other evidence from which the jury could have decided that defendant was part of a drug caravan with Harvey. Trooper Coleman saw the two cars traveling in tandem for some distance. Defendant's counsel, in opening statement, said that the two were traveling together from Chicago to Muskegon. Defendant told Trooper Coleman he was going to Muskegon. There was a receipt from Muskegon in the car occupied by defendant. Cell phone records indicated frequent contact between defendant and Harvey.

The Confrontation Clause did not require exclusion of Harvey's out-of-court statements. Even if the admission of the statements was in error, no "actual prejudice" resulted from their admission. Defendant has not demonstrated that the admission of these statements entitles him to relief from the conviction.

In the opinion of the undersigned, the state trial court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that the instructions to the jury on conspiracy were incorrect, misleading, and prejudicial. Petitioner argues that when the judge instructed the jury that in order to be found guilty of conspiracy the defendant must have an intent to deliver, he was being misleading as Petitioner was also being charged with delivery of cocaine. Petitioner also argues that the trial court judge left out an element of an offense, which Petitioner claims violates due process. Petitioner is barred from habeas relief under MCR 6.508 (D); Petitioner failed to raise these claims on direct appeal. In order to show a constitutional violation, Petitioner must demonstrate that the instruction violated due process. *Henderson v. Kibbe*, 431 U.S. 145, 153 (1977).

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," . . . not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" . . . .

*Id.* at 154. The evidence presented at trial, taken in the light most favorable to the prosecution, was sufficient to justify the instructions given by the court. Petitioner has not established good cause for failing to raise this issue on appeal. Petitioner has also failed to show any actual prejudice. Nor has Petitioner illustrated an instance of a fundamental miscarriage of justice to be entitled to habeas relief. Petitioner has also failed to show how the trial court's jury instructions violated due process.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate

of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated: August 29, 2011